**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **MARLON ALEXIS DE LEON, CANTILLANO** | : | **CIVIL ACTION** |
| | : | |
| Petitioner, | : | |
| | : | |
| v. | : | |
| | : | **NO. 26-3787** |
| **J.L. JAMISON, *et al.*,** | : | |
| | : | |
| Respondents. | : | |

**Perez, J.**                                                                                     **June 12, 2026**

**MEMORANDUM**

Petitioner Marlon Alexis De Leon Cantillano brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, challenging his detention pending his removal from the United States. Cantillano is subject to a final order of removal and has been detained for only eleven days. His current detention is authorized by 8 U.S.C. § 1231(a) and does not yet violate due process. The Court must therefore deny his petition.

## I.    Background

Marlon Alexis De Leon Cantillano is a 35-year-old citizen of Honduras who has lived in the United States for approximately 20 years, is married to a United States citizen, and has three children between the ages of 13 and 17, who are also United States citizens. ECF No. 1 ¶¶21–22.

On June 19, 2018, Immigration Judge Amena A. Khan of the Immigration Court in New York, New York entered an *in absentia* order of removal ("Removal Order") against Petitioner and ordered him removed to Honduras. *Id.* ¶ 24; *see also* ECF No. 1-1. Petitioner failed to appear at the hearing because he never received notice of the hearing date and time and was unaware that a hearing had been scheduled. ECF No. 1 ¶ 24. Following entry of the Removal Order, Petitioner

1

retained an immigration attorney. *Id.* ¶ 25. Petitioner's former immigration attorney never filed a motion to reopen his case. *Id.* ¶ 26.

However, Petitioner did pursue other avenues to obtain lawful permanent resident status. On March 2, 2021, Petitioner's spouse filed a Form I-130 Petition for Alien Relative on Petitioner's behalf. *Id.* ¶ 28. The filing was accepted by USCIS on March 22, 2021, and later approved and forwarded to the National Visa Center for immigrant visa processing. *Id.* ¶¶ 28–29; *see also* ECF Nos. 1-2, 1-3. Petitioner also has a pending Form I-601A Provisional Unlawful Presence Waiver application. ECF No. 1 ¶ 30.

U.S. Immigration and Customs Enforcement ("ICE") officers arrested Petitioner on June 1, 2026. ECF No. 1 ¶ 31. On June 2, 2026, Petitioner filed this Petition for Writ of Habeas Corpus (the "Petition") arguing his detention violates the Due Process Clause of the U.S. Constitution.[1] ECF No. 1. Petitioner does not assert a prolonged detention claim. *Id.* ¶ 36. Rather, he argues that under *Mathews v. Eldridge*, 42 U.S. 319, 335 (1976) (requiring courts to balance "(1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value of additional or substitute procedural safeguards; and (3) the Government's interest"), he should be, at minimum, released under an order of supervision. *Id.* Petitioner intends to seek reopening of his immigration proceedings and pursue available immigration relief but believes his current detention and possible removal will interfere with those efforts. *See id.* ¶ 4. Petitioner does not, however, ask this Court to determine the validity of the Removal Order, reopen his immigration proceedings, or interfere in ICE's decision to execute the Removal Order. *See* ECF No. 9 at 3. He asks only for release from custody subject to supervision, pending his removal. *Id.*

---

[1] Unlike the majority of habeas petitions the Court has seen, this Petition does not argue Petitioner's detention violates the Immigration and Nationality Act ("INA").

On June 5, 2026, Respondents filed an opposition to the Petition, arguing that Petitioner is subject to detention under 8 U.S.C. § 1231(a), which allows the government to detain a noncitizen who is subject to a final order of removal in order to effectuate that order, and his detention comports with constitutional due process. ECF No. 7 at 8. Respondents also argue that the Court lacks jurisdiction under 8 U.S.C. § 1252(g) to review ICE's decision to execute his removal order. *Id.* On June 10, 2026, Petitioner filed a reply in support of his Petition. ECF No. 9.

## II.        Jurisdiction

As an initial matter, Respondents argue that 8 U.S.C. § 1252(g) strips this Court of jurisdiction over the Petition because it, in essence, seeks judicial review of ICE's decision to execute the Removal Order. Petitioner counters, and the Court agrees, that this characterization is inaccurate.

Under 8 U.S.C. § 1252(g), "no court shall have jurisdiction to hear any cause or claim by any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien." This provision does not "sweep in any claim that can technically be said to 'arise from' the three listed actions of the Attorney General. Instead, . . . the language . . . refer[s] to just those three specific actions themselves." *Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018); *Reno v. Am.-Arab Anti-Discrimination Comm.* ("*AAADC*"), 525 U.S. 471, 482 (1999) ("The provision applies only to three discrete actions that the Attorney General may take: her 'decision or action' to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders.'"); *see also Tazu v. Atty. Gen. U.S.*, 975 F.3d 292, 296 (3d Cir. 2020) ("Section 1252(g) does not sweep broadly. It reaches only these three specific actions, not everything that arises out of them.").

Contrary to Respondents' characterization, Petitioner does not challenge the Removal Order itself or ICE's decision to execute it. The Court need not decide the validity of the Removal

Order or whether ICE may remove Petitioner to Honduras in order to grant the relief Petitioner requests. Petitioner only asks that, pending his actual physical removal from the United States, he be released on supervision because his detention violates due process. The Court has jurisdiction to review Petitioner's constitutional challenge to his detention under 28 U.S.C. § 2241. *See Zadvydas v. Davis*, 533 U.S. 678, 687–88 (2001).

To the extent Petitioner does ask this Court to enjoin his removal, the Court lacks jurisdiction to do so and must deny the request. 8 U.S.C. § 1252(g); *see Tazu*, 975 F.3d at 297.

**III.     Due Process**

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690. Accordingly, the Due Process Clause places limitations on detention of noncitizens pending their removal from the United States. *Id.* at 691–92. For example, a statute that would "permit[] an indefinite, perhaps permanent, deprivation of human liberty" without procedural protections would create a "serious constitutional problem." *Id.* Thus, the Supreme Court has limited the detention of inadmissible noncitizens subject to a final order of removal to only the period reasonably necessary to effectuate a removal—presumptively no more than six months. *Id.* at 689.

Section 1231 of the INA governs the detention of noncitizens like Petitioner who are subject to a final order of removal. 8 U.S.C. § 1231(a). Generally, the government must remove the noncitizen within a 90-day "removal period." *Id.* § 1231(a)(1)(A). Relevant here, the removal period begins on the date the order of removal becomes administratively final. *Id.* § 1231(a)(1)(B)(i). A removal ordered issued *in abstentia* becomes administratively final immediately upon its entry. 8 C.F.R. § 1241.1(e). During the removal period, a noncitizen who has been found inadmissible is subject to mandatory detention. 8 U.S.C. § 1231(a)(2)(A).

4

Petitioner is subject to a final order of removal dated June 19, 2018. ECF No. 1-1. The Removal Order was issued *in absentia*, so it became administratively final immediately upon its entry. 8 C.F.R. § 1241.1(e). Therefore, the 90-day removal period expired on September 17, 2018. Petitioner is not subject to mandatory detention under §1231(a)(2)(A).

The remaining two potentially applicable subsections of § 1231(a) present a conflict. Section 1231(a)(3), titled "Supervision after 90-day period," provides that if a noncitizen subject to a final order of removal is not removed within the 90-day removal period, he "shall be subject to supervision" with certain enumerated conditions, including periodic reporting requirements, restrictions on certain activities, and providing certain information. §1231(a)(3). Petitioner contends that § 1231(a)(3) mandates supervision, not detention, following the removal period. Not so—at least, not yet.

Section 1231(a)(6) provides that a noncitizen who has been ordered removed may be detained beyond the removal period "if he is (1) inadmissible, (2) removable as a result of violations of status requirements, entry conditions, or the criminal law, or for national security or foreign policy reasons, or (3) a risk to the community or unlikely to comply with the removal order." *Johnson v. Guzman Chavez*, 594 U.S. 523, 528–29 (2021). The list is disjunctive, meaning the subsection applies to noncitizens ordered removed who are inadmissible, regardless of whether DHS has determined they are a risk to the community or unlikely to comply with a removal order. *See Clark v. Martinez*, 543 U.S. 371, 378 (2005). Section 1231(a)(6) also contemplates that, if a noncitizen who could otherwise be detained beyond the 90-day removal period is released, then he "shall be subject to the terms of supervision in paragraph (3)." This demonstrates that the two subsections are not mutually exclusive. ICE is detaining Petitioner under § 1231(a)(6). If Petitioner

5

is released, then he will be subject to the terms of supervision under § 1231(a)(3). Nothing in the statute gives the Court the authority to direct ICE to apply one or the other at this point in time.

That does not mean, of course, that a final order of removal allows the government to detain an inadmissible noncitizen indefinitely. The Supreme Court has "read an implicit [constitutional] limitation" into the length of detention during the post-removal period, holding that a noncitizen who is subject to a final removal order may be detained only for the "period reasonably necessary to bring about that [noncitizen's] removal from the United States." *Zadvydas*, 533 U.S. at 689. Six months following the removal order is presumptively constitutional. *Id.* After six months, a noncitizen must "provide[] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, [and] the Government must respond with evidence sufficient to rebut that showing." *Id.* at 701.

Petitioner would have the Court begin counting the six-month period from the date the Removal Order became final. However, *Zadvydas* and its progeny do not go so far. They instead recognize that detention pending removal pursuant to a final removal order is constitutionally valid, *Demore v. Kim*, 538 U.S. 510, 512 (2003), until it crosses the threshold of what is reasonably necessary, *Zadvydas*, 533 U.S. at 689. It is the detention itself that Petitioner contends is unconstitutional, not the determination that he is inadmissible nor the validity of the Removal Order. Petitioner's detention falls within what is permitted by §1231(a)(6). If released, § 1231(a)(3) will apply, but not before. Petitioner has been detained for eleven days. This is well "within the 'presumptively reasonable' six-month period." *Suthar v. Jamison*, No. 26-3031, 2026 WL 1588000, at *2 (E.D. Pa. June 3, 2026) (Sanchez, J.) (quoting *Cabrera v. Jamison*, No. 26-1441, 2026 WL 788687, at *2 (E.D. Pa. Mar. 20, 2026) (Schmehl, J.)) (denying petition for writ of habeas corpus where noncitizen was subject to final order of removal which was final years before he was

detained and where noncitizen was detained for less than a month). Petitioner is, therefore, not entitled to habeas relief at this time.

## IV.    Conclusion

For the foregoing reasons, the Court must deny the Petition at this time. This denial is without prejudice to any future habeas petition challenging prolonged or otherwise unconstitutional detention if Petitioner's circumstances materially change.